### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GEOFF BINNEY ET AL,

               Plaintiffs,

v.                                         CIVIL NO. 05-70453
                                         HON. LAWRENCE P. ZATKOFF

ABN AMRO MORTGAGE GROUP, INC.
and INTERFIRST, a division of ABN AMRO
MORTGAGE GROUP, INC.,

               Defendants.

_____/

### OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 9, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss, filed on June 15, 2006.

Plaintiff has filed a response, and Defendants have replied.   The Court finds that the facts and legal

arguments are adequately presented in the parties' papers and the decision process would not be

significantly aided by oral argument.  Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby

ORDERED that the motion be resolved on the briefs submitted.  For the reasons set forth below,

Defendants' Motion to Dismiss is GRANTED.

## II.  BACKGROUND

Defendants are wholesale mortgage lenders.  As part of their business, Defendants fund loans

originated by mortgage brokers.  Defendants classify these mortgage brokers in two categories:

Intermediary Brokers, and Secondary Market Brokers.  Intermediary Brokers originate loans that

are either directly funded or table funded by Defendants.  (Table funded loans close in the broker's name.  Defendants simultaneously advance the loan funds and the loan is then assigned to Defendants.)  Secondary Market Brokers fund the loans themselves, and the loan is subsequently sold to Defendants.  Defendants have a Secondary Market Key Account Pricing ("SMKAP") program that pays addition compensation to Secondary Market Brokers based on the loans they sell to Defendants.

On October 31, 2002, Plaintiff obtained a mortgage loan from Defendants for $221,300.  The loan was originated by First Alliance Mortgage.  First Alliance acted as an Intermediary Broker, and the loan was table funded by Defendants.  First Alliance also acts as a Secondary Market Broker for Defendants, and has broker numbers for its Intermediary status and its Secondary Market status.  Because First Alliance originated Plaintiff's loan as an Intermediary Broker, the loan was not eligible for a SMKAP payment.  However, a SMKAP payment of $276 was inadvertently made on the loan.  When the error was discovered First Alliance returned the $276.

When Plaintiff learned of the $276 payment he filed suit on behalf of himself and similarly situated individuals.  Plaintiff claims the payment violated the Truth in Lending Act ("TILA") and the Real Estate Settlement Practices Act ("RESPA").  On June 15, 2006, Defendants filed the instant motion to dismiss for lack of standing.  On July 28, 2006 Plaintiff filed a motion for class certification.

### III.  LEGAL STANDARD

A challenge to standing is generally treated as an issue of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  However, questions of statutory standing may be analyzed under Rule 12(b)(6).  *See Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295 (6th Cir.

2006).  Because Defendants argue that Plaintiff does not have statutory standing to sue under TILA or RESPA the Court will analyze the instant motion under Rule 12(b)(6).

When analyzing a claim pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor.  *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992).  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).  Furthermore, the Court need not accept as true legal conclusions or unwarranted factual inferences.  The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover.  *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice."  2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34[2] (3d ed. 2000).

## IV.  ANALYSIS

The salient facts are undisputed: Defendants do not contest that a SMKAP payment for Plaintiff's loan was made to First Alliance, and Plaintiff does not contest that the payment was inadvertent, or that it was returned to Defendants.  The question is whether these facts give Plaintiff standing to sue Defendants under TILA or RESPA.

### A.     TILA Claim

Pursuant to TILA, creditors must disclose the "finance charge" for each transaction.  See 12 C.F.R. § 226.18.  In his complaint, Plaintiff alleges that the $276 SMKAP payment to First Alliance

should have been disclosed as a finance charge in his loan documentation.

Defendants note that a finance charge is described as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."  12 C.F.R. § 226.4(a).  Defendants argue that the SMKAP payment was made outside of and after the settlement of Plaintiff's loan.  Therefore, it cannot be a charge imposed directly or indirectly on Plaintiff "as an incident to or a condition of the extension of credit."

Plaintiff's response to Defendants' motion to dismiss does not address Defendants' arguments regarding the TILA claim.  The Court finds Defendants' arguments persuasive, and will dismiss the TILA claim.

**B.	RESPA Claim**

Defendants' argument regarding the RESPA claim is similar to its argument regarding the TILA claim.  Defendants argue that Plaintiff was not charged the $276 SMKAP payment made to First Alliance, and thus does not have standing to sue under RESPA.

Defendants rely on *Moore v. Radian Group, Inc.*, 233 F. Supp. 2d 819 (E.D.Tex. 2002), and *Mullinax v. Radian Guaranty, Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004).  In *Moore*, the plaintiffs alleged that mortgage lenders were referring primary mortgage insurance ("PMI") business to insurers in violation of RESPA.  The plaintiffs did not argue that they were overcharged for their insurance, rather they argued that:

> [RESPA] conferred upon borrowers a statutory right to be free from any unlawful referral or kickback arrangement, without regard to whether the borrower alleges he or she has suffered any injury as a result therefrom either in the form of increased settlement charges or as a result of having a portion of the settlement charges kicked-back in exchange for the referral.

*Moore*, 233 F. Supp. 2d at 823.

After reviewing existing case law, and RESPA's legislative history, the court rejected the plaintiff's position. The court held that "a private plaintiff would have standing to sue for treble damages measured by that portion of a PMI payment that is excessive (and so caused by an unlawful referral arrangement) or otherwise used to fund a kickback in exchange for the referral of the PMI business." *Id.* at 826.

The holding of *Moore* was extended by *Mullinax*. The plaintiffs in *Mullinax* claimed that the defendant obtained their mortgage insurance business by paying illegal kickbacks. As in *Moore*, the plaintiffs did not allege that they were overcharged for their insurance, but they did allege that illegal kickbacks were made. The plaintiffs position was that "although they have not claimed any monetary injury, they have been injured because 'they participated in a settlement process where illegal kickbacks were paid and that the violation of the statutory prohibition against kickbacks gives them standing . . .'" *Mullinax*, 311 F. Supp. 2d at 481 (citation omitted). However, the court rejected that position. Relying on *Moore* and other cases, the court held that damages were available under RESPA only if the plaintiffs were overcharged for the services. *Id.* at 486.

In response, Plaintiff relies on *Kahrer v. Ameriquest Mortgage Company*, 418 F. Supp. 2d 748 (W.D.Pa. 2005). In *Kahrer*, the plaintiff was delinquent in payments on a Sears Roebuck credit card. A agent for Sears recommended that the plaintiff refinance her home with Ameriquest. Ameriquest agreed to grant the plaintiff a mortgage refinancing loan on the condition that part of the loan would be used to pay off the debt on her Sears credit card. The plaintiff argued that Sears referred her to Ameriquest in exchange for the requirement that she pay off her credit card, and this constituted an illegal referral under RESPA. Ameriquest argued that the plaintiff did not have

standing to sue under RESPA because she was not overcharged for her settlement services.  The court, however, criticized *Moore* and *Mullinax* and their predecessor cases, claiming they misread RESPA's legislative history.  The court held that the "plaintiff need not allege that she has been overcharged for the settlement services provided by Ameriquest in order to bring a private right of action under § 8 of RESPA."  *Id.* at *24.

Thus, the disagreement between *Moore, Mullinax*, and *Kahler* is over the precise nature of the private right of action given to borrowers by RESPA.  *Moore* and *Mullinax* held that RESPA's private right of action is based on amounts plaintiffs overpaid for their settlement services.  In contrast, *Kahler* held that the rights conferred by RESPA encompass the right to obtain a mortgage loan where nothing of value has been given in exchange for the referral, regardless of whether the borrower overpaid for settlement services.

The Court need not decide today which view is correct, because Plaintiff in the instant case has failed to state a claim under either theory.  In Plaintiff's response to Defendants' motion, he argues that there was a nexus between a $375 administrative fee he paid, and the $276 SMKAP payment made to First Alliance.  However, as Defendants point out, nowhere in Plaintiff's complaint did he allege that part of his $375 administrative fee was paid to First Alliance as an illegal kickback.  The complaint does not mention the $375 administrative fee at all.

Plaintiff now argues that because at one point in time he paid Defendants $375, and at another point in time Defendants paid First Alliance $276, part of the $375 necessarily constituted an illegal kickback in exchange for the referral.  However, this theory is without merit: not only is there no evidence to support it, Plaintiff's own evidence contradicts it.  As factual support for his complaint, Plaintiff provided the affidavit of Stuart Stamm.  Stamm stated that First Alliance acted

6

as an Intermediary Broker on Plaintiff's loan, and thus was not eligible for a SMKAP payment. However, a SMKAP payment of $276 was inadvertently made. When the mistake was discovered, First Alliance returned the payment.

Thus, even under *Kahler's* liberal standard, Plaintiff does not have a private right of action under RESPA. Although the plaintiff in *Kahler* was not overcharged for settlement services, the mortgage lender gave something of value in exchange for the referral. In the instant case, First Alliance acted as an Intermediary Broker on Plaintiff's loan. As Intermediary Brokers are not eligible for SMKAP payments, First Alliance cannot be said to have referred the loan in exchange for part of the $375 administrative fee. When the inadvertent payment was discovered, First Alliance returned it. Plaintiff has not demonstrated that something of value was given for the referral, and thus does not have a private right of action under RESPA. Therefore, the Court will dismiss Plaintiff's RESPA claim.

## V. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss is GRANTED. Plaintiff's Motion for Class Certification is DENIED as moot. Plaintiff's action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: August 9, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 9, 2006.

7

s/Marie E. Verlinde
Case Manager
(810) 984-3290

8